UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHRISTOPHER M. ANSPACH,

     Plaintiff,                    Civil Action No. 14-13135

         v.

                              Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

**OPINION AND ORDER**

    Plaintiff Christopher M. Anspach ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Plaintiff has filed a Motion for Summary Judgment [Doc. #16]. Defendant did not file a motion for summary judgment, but instead, filed a Motion to Remand to the administrative level for further fact-finding [Doc. #21].  Plaintiff declines to stipulate to a remand for further fact-finding, arguing that he is entitled to a remand for benefits.  For the reasons discussed below, Defendant's Motion to Remand [Docket #21] is GRANTED, remanding the case for further administrative proceedings.  Plaintiff's Motion for Summary Judgment [Docket #16] is DENIED as to the request for an award of benefits

-1-

and DENIED as MOOT as to the request to remand for further administrative proceedings.

## PROCEDURAL HISTORY

On August 29, 2011, Plaintiff applied for DIB and SSI, alleging disability as of June 26, 2005 (Tr. 227-233, 234-239). After the initial claim denial, Plaintiff requested an administrative hearing, held on February 6, 2013 in Mount Pleasant, Michigan (Tr. 125). Administrative Law Judge ("ALJ") Tammy A. Thames presided. Plaintiff, represented by attorney Michael J. Plowman, testified (Tr. 129-143), as did Vocational Expert ("VE") Richard Riedl (Tr. 144-147). On April 5, 2013, ALJ Thames found that Plaintiff was not disabled. *Id.* (Tr. 120). On July 11, 2014, the Appeals Council denied review (Tr. 1-7). Plaintiff filed suit in this Court on August 14, 2014.

## BACKGROUND FACTS

Plaintiff, born February 25, 1976, was 37 at the time of the administrative decision (Tr. 120, 227). He graduated from high school and worked previously as a car washer, dishwasher, inspector, and laborer (Tr. 275). He alleges disability as a result of social anxiety, Attention Deficit Hyperactivity Disorder ("ADHD"), insomnia, social rage, and Post Traumatic Stress Disorder ("PTSD") (Tr. 274).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He graduated from high school and attended two semesters of college (Tr. 129, 131). He completed a program in graphics communications (Tr. 129). The longest he had ever

-2-

held a job was three years (Tr. 130). His last job, involving graphics communication and screen printing, ended in 2010 (Tr. 130). He was discharged from the graphics job after four days because he "destroyed too many shirts from not paying attention" and failed to perform his job "correctly" (Tr. 131). His attempt to find work through Michigan Rehabilitation Services was unsuccessful and his case was closed in 2011 (Tr. 131). He currently lived with his grandfather and his girlfriend (Tr. 131). He received state disability assistance (Tr. 132). His girlfriend was also on disability (Tr. 132).

Plaintiff was uncomfortable "being around people for extended periods of time" (Tr. 132). He experienced social anxiety including nervousness, sweating and fear (Tr. 133). He coped with anxiety by removing himself from the stress-inducing situations (Tr. 133). He had not found a medication that improved his symptoms of anxiety (Tr. 133). He was treated for ADHD when he was a child and had been prescribed Ritalin (Tr. 133). He was diagnosed with Asperger's Syndrome in 2010 (Tr. 133). He treated the condition with counseling (Tr. 133). Symptoms of the condition included the obsessive need to finish a project before focusing on anything else and concentrational problems when performing repetitive work (Tr. 134-135). His biweekly counseling involved working on "behavioral traits," "focus," and dealing with PTSD as a result of growing up in a high crime area (Tr. 136). He was unable to interact with his friends for more than six hours, after which time he experienced "nervousness" and "restlessness" (Tr. 137). He averaged four hours of sleep each night (Tr. 138). He and his girlfriend "ate out" around three times a month (Tr. 138). He left the house

-3-

only to grocery shop and attend doctors' appointments (Tr. 139).

Plaintiff believed that he was unable to work full time because he was "a perfectionist," was "always worried" that he would not "do a good enough job," and he lost concentration easily (Tr. 139). He also experienced severe depression around three times a week, at which time he would not communicate with others (Tr. 139). He had been with his girlfriend for two years (Tr. 140). In his first semester of college, he did not experience problems understanding the material and received A's and B's (Tr. 140). However, he would sit in the back of the classroom to distance himself from others (Tr. 140). He did not experience problems following simple instructions but might forget "steps" of a multi-step task (Tr. 141).

In response to questioning by his attorney, Plaintiff reiterated that he did not sleep more than four hours a night and was "physically tired" during the day (Tr. 142). He experienced problems following social cues (Tr. 142).

**B. Medical Evidence[1]**

### 1. Treating Records

July, 2005 records by Gratiot County Community Mental Health Services state that Plaintiff enjoyed video games, riding his bike, fishing, swimming, and shopping at the mall (Tr. 331). He exhibited a normal thought process (Tr. 332). Notes sent to treating physician

---

[1]Plaintiff does not dispute the ALJ's assessment of the physical conditions. As such, the discussion is limited to records pertaining to his treatment for psychological problems.

James K. Hall, M.D. state that Plaintiff was diagnosed with agoraphobia (Tr. 359). Plaintiff was assigned a GAF of 50 to 55[2] (Tr. 332, 347, 376, 575). Plaintiff was prescribed an increased dose of Zoloft (Tr. 360). August, 2005 records state that Plaintiff experienced depression, insomnia, suicidal ideation, and social anxiety (Tr. 334). Plaintiff reported five previous suicide attempts (Tr. 334). He denied hallucinations (Tr. 334). He currently worked part-time as a car part inspector, but noted that he had quit or been terminated from several jobs after failing to get along with coworkers (Tr. 335). He was assigned a GAF of 45 (Tr. 336, 340, 380, 579). The same month, Dr. Hall opined that Plaintiff was disabled due to a "crowd phobia" (Tr. 358, 372, 470). September, 2005 counseling notes state that he anticipated traveling to the Philippines to marry his girlfriend (Tr. 586).

An October, 2005 treatment summary states that Plaintiff experienced reduced symptoms of depression with a medication change and therapy (Tr. 361). Plaintiff reported that he would "need to be considering other options" if the "disability thing doesn't work out" (Tr. 643). In an October, 2005 "employment planning checklist," Plaintiff denied physical limitations, stating that he wanted to work outside, and avoid jobs where he became bored (Tr. 341, 582). The following month, Plaintiff told his counselor that he was not upset when his application for disability was denied, stating it was "'no big deal . . . I only wanted

---

[2]

A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* ("*DSM-IV-TR*"), 34 (4th ed. 2000). A GAF score of 51-60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. *DSM-IV-TR* at 34.

it for an income while I got things together . . . now I'll just have to figure out how to find a job I can stand which will pay the bills . . ." (Tr. 647)(punctuation in original).   In December, 2005, Plaintiff admitted that he declined several job opportunities that were inconsistent with his long-term goals (Tr. 652).   January, 2006 records state that Plaintiff was currently taking Zoloft and had a GAF of 55 (Tr. 468).   Plaintiff reported in March, 2006 that he was actively seeking employment (Tr. 660).   In July, 2006, Plaintiff was enrolled in a program to obtain training and procure employment (Tr. 598).

In September, 2006, mental health discharge records note a GAF of 65[3] and no need for follow-up services (Tr. 581).   The same month, Plaintiff sought emergency treatment after injuring himself "throwing a frisbee and football" (Tr. 425).   In March, 2010, Troy Novak, PA-C opined that Plaintiff did not experience any mental limitations (Tr. 448).   In June, 2010, Gregg J. Stefanek, D.O. noted the conditions of depression, ADHD, insomnia, and anxiety (Tr. 441-442).   He noted that Plaintiff's affect was "appropriate" and that he followed directions well (Tr. 438, 442).

March, 2011 treating notes by Troy Novak note Plaintiff's reports of vertigo for the past three months and a January, 2011 emergency room visit at which time Plaintiff was prescribed Antivert (Tr. 413, 702).   Treating notes state that "labs, EK and CT were all normal" (Tr. 702).   Novak found that the vertigo was "positional" (Tr. 702).   He refused to

---

[3]

GAF scores in the range of 61-70 indicate "some mild [psychological] symptoms or some difficulty in social, occupational, or school functioning." *DSM-IV-TR* at 32.

-6-

prescribe medicine for ADHD (Tr. 703). Dr. Stefanek's June, 2011 records note Plaintiff's report of semiweekly depression as a result of financial problems (Tr. 411, 704).

In August, 2011 Plaintiff sought renewed treatment with Gratiot County Community Mental Health Services (Tr. 487-490). Intake records note an unremarkable appearance, coordination, behavior, orientation, affect, mood, and judgment (Tr. 490-491, 607-608). His limitation in interpersonal relationships and activities of daily living were deemed mostly moderate (marked limitations in developing relationships), but "marked" as to educational and employment issues (Tr. 492, 609). He was assigned a GAF of 46 due to depression, "problems with primary support group," and occupational problems (Tr. 493, 610). October, 2011 counseling records state that Plaintiff did not "seem to have any concerns about the fact that he is both applying for disability while also applying for monies which would help him start his own business" (Tr. 673). Social worker Eileen Wells noted that she was "not successful" in getting Plaintiff to address the "inconsistencies" in the two goals (Tr. 673).

In February, 2012, Dr. Stefanek's notes state that Plaintiff believed that he was disabled because of right shoulder pain, ADHD, and insomnia (Tr. 714). In March, 2012, Plaintiff told social worker Wells that he would use his anticipated DIB award money to start a business (Tr. 679). March and July, 2012 records state a diagnosis of mild to moderate sleep apnea (Tr. 541-542). In April, 2012, Dr. Stefanek stated that he concurred with Dr. Mike's finding of disability due to Asperger's Syndrome (Tr. 719). Plaintiff was encouraged to exercise and diet (Tr. 560). He sought treatment for anxiety in July, 2012 (Tr. 567). In

-7-

August, 2012, he sought treatment for vertigo (Tr. 529). A CT of the head was unremarkable (Tr. 535-536). The same month, therapy notes state that he relied on friends and family for support (Tr. 624). He did not exhibit any unusual behaviors (Tr. 628-629).

### 2.  Non-Treating Records

In February, 2008, Janette S. Caputo Ph.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's report of depression, social anxiety, anxiety in crowded places, sleep difficulties, racing thoughts, and unsuccessful relationships with women (Tr. 382). Plaintiff reported that he had "a dozen or so friends" (Tr. 385). Dr. Caputo observed that Plaintiff was "socially appropriate and very pleasant" (Tr. 385). She noted good judgment and mathematical skills (Tr. 387). She assigned him a GAF of 38 with a fair prognosis, noting diagnoses of major depression, "severe with psychotic features," and social phobia (Tr. 388). She found that he could handle his own benefit funds (Tr. 388).

A July, 2009 psychological evaluation by Robert Cooper, MA/LLP states that Plaintiff appeared adequately groomed and friendly (Tr. 395). Wechsler Adult Intelligence Scale, Third Edition ("WAIS-III") revealed an average IQ (Tr. 395-397). May, 2011 notes by a job procurement service state that Plaintiff was provided with, but did not follow through on multiple job leads (Tr. 399-401).

In November, 2011, Dr. Caputo reexamined Plaintiff on behalf of the SSA, noting Plaintiff's claims that symptoms of ADHD, insomnia, chronic suicidal depression, social anxiety and PTSD had worsened in recent years (Tr. 478). He also reported an Obsessive

-8-

Compulsive Disorder ("OCD") characterized by the need to put "everything . . . in its place" (Tr. 479).  He attended a "trading card game tournament" on Friday nights (Tr. 479).  He reported "temporary vertigo with loud sounds" (Tr. 479).  He socialized with friends and shared the household chores with his girlfriend (Tr. 481).  Dr. Caputo diagnosed him with depression, ADHD, and OCD, assigning him a GAF of 49 (Tr. 483).  She found that he could manage his own benefit funds (Tr. 483).

In January, 2012, Joseph DeLoach, Ph.D. completed a non-examining assessment of the treating and consultative findings, noting the diagnoses of social anxiety, ADHD, insomnia, social rage, and PTSD (Tr. 151).  He found mild restriction in activities of daily living, and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 158).  Dr. DeLoach found Plaintiff's allegations of disability "partially credible," noting Plaintiff's good academic history and conservative psychological treatment (Tr. 159).

In February, 2012, Edward J. Mike performed a one-time consultative examination at the recommendation of Dr. Stefanek, noting Plaintiff's poor hygiene and reports of traumatic childhood events (Tr. 502, 618).  Dr. Mike diagnosed Plaintiff with Asperger's Syndrome, PTSD, depression, and anxiety and found him "socially alienated" (Tr. 506, 623).  He assigned him a GAF of 50 (Tr. 506).

### 3.  Material Submitted After the April 5, 2013 Administrative Decision[4]

In February, 2013, Plaintiff was referred to neurosurgeon David D. Udehn, M.D. after an MRI showed abnormalities (Tr. 764).  Plaintiff reported about two episodes each year of nausea, vomiting, and blackouts since the Spring of 2010 (Tr. 764-765).  A neurological exam was unremarkable (Tr. 767-768).  April, 2013 treating records note Plaintiff's report of side effects from Celexa (Tr. 745).  The same records note an "abnormal MRI" earlier the same year (Tr. 750).  The same month, Plaintiff reported recent lightheadedness and headaches (Tr. 750).  Dr. Stefanek's August, 2013 treating notes state that an MRI of the brain was negative for abnormalities (Tr. 742).

### C.  Vocational Expert Testimony

VE Richard Riedl characterized Plaintiff's past work as a dishwasher/kitchen helper as unskilled and exertionally medium[5] (Tr. 144).  ALJ Thames then posed the following set

---

[4]

Where the Appeals Council denies a claimant's request for a review of an application based on material submitted after the administrative decision, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Cotton v. Sullivan,* 2 F.3d 692, 696–696 (6th Cir.1993). Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." (emphasis added).  Plaintiff did not rely on the newly submitted evidence in support of his motion for summary judgment or provide "good cause" for failure to timely submit the evidence.  However, Defendant concedes that the newer material contains grounds for remand for consideration of the condition of vertigo. *Defendant's Brief* at 4, *Docket #21.*

[5]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small

of hypothetical limitations to the VE, describing a hypothetical individual of Plaintiff's age,

education, and work experience:

> [Consider a hypothetical individual . . . with the following limitations: having the physical capacity to perform work at all exertional levels; having the ability to understand, remember and carry out simple instructions, and perform simple tasks with no production-rate pace work, but rather goal-oriented work; and no more than occasional interaction with the public or coworkers.  Would an individual with these limitations be capable of performing any of the claimant's past work? (Tr. 145).

The VE testified that given the above limitations, the individual would be unable to perform

any of Plaintiff's past relevant work, but could perform the exertionally medium, unskilled

work of a laundry laborer (3,100 positions in the lower peninsula of Michigan); cleaner

(11,000); or automobile detailer (5,500) (Tr. 146).  The VE stated that if the same individual

were unable to follow simple instructions,  required frequent supervision, or, needed to take

"frequent, unscheduled rest breaks," all work would be precluded (Tr. 146).

   **D.**   **The ALJ's Decision**

   Citing the medical records, ALJ Thames found that Plaintiff experienced the severe

impairments of "major depressive disorder, [PTSD] . . . social phobia, [ADHD]

predominantly hyperactive-impulsive type, and [OCD]"  but that none of the conditions met

or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr. 97-98).

---

tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

She found that Plaintiff experienced mild limitation in daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 99-100). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for work at all exertional levels with the following limitations:

> [Plaintiff] has the ability to understand, remember, and carry out simple instructions and perform simple tasks with no production rate pace work, but rather goal oriented work. He must have no more than occasional interaction with the public (Tr. 102).

Citing the VE's testimony, the ALJ found that although Plaintiff was unable to perform his past relevant work, he could work as a laundry laborer, cleaner, or auto detailer (Tr. 119-120).

The ALJ discounted Plaintiff's allegations of disability, noting that he was able to ride his bike, fish, swim, shop, care for his cat, perform household chores, and handle the finances of his disabled girlfriend (Tr. 113). She cited an occupational counselor's observation that Plaintiff was not "motivated" to find employment (Tr. 114). She assigned "considerable weight" to Dr. DeLoach's findings and adopted Dr. Caputo's assessment "[t]o the extent it [was] consistent" with the RFC (Tr. 115). She accorded "little weight" to the opinions of Drs. Hall, Mike, and Stefanek on the basis that their findings were not consistent with the treating and consultative records (Tr. 116).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of*

*Health and Human Services,* 757 F.2d 803, 804 (6ᵗʰ Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6ᵗʰ Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6ᵗʰ Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6ᵗʰ Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## <u>ANALYSIS</u>

In response to Plaintiff's motion for summary judgment, Defendant filed a motion to remand for further fact-finding for consideration of whether the condition of vertigo created work-related impairments. *Docket #21.* Plaintiff declined to stipulate to a remand for further fact-finding, arguing instead that he is entitled to a remand for benefits. *Plaintiff's Response, Docket #22.* He argues generally that the evidence overwhelmingly supports a disability finding. First, he contends that Dr. DeLoach's non-examining findings, citing by the ALJ in support of the administrative determination, do not reflect the totality of medical evidence. He argues further that while the ALJ ostensibly assigned "considerable weight" to Dr. Caputo's consultative opinion, the RFC does not reflect the bulk of Dr. Caputo's findings.

Plaintiff's request for a remand for benefits on this record is unwarranted. He contends that Dr. DeLoach's findings do not accurately reflect the treating records created

-14-

before the January, 2012 non-examining assessment.   However, as noted by the ALJ, the records created prior to Dr DeLoach's evaluation contain substantial evidence that Plaintiff could perform a significant range of work.   As early as October, 2005, Plaintiff stated that an earlier denial of benefits was "no big deal" because he "only wanted it for an income while [he] got things together . . ." (Tr. 647).   The same month, Plaintiff reported reduced symptoms of depression with a medication change and therapy (Tr. 361).   In September, 2006, Plaintiff's psychological limitations were deemed  mild (Tr. 581).   In June, 2010, Dr. Stefanek noted that Plaintiff followed directions well and had an appropriate affect (Tr. 438, 442).   October, 2011 counseling records note that Plaintiff intended to use his anticipated DIB funds to start his own business (Tr. 673).

Plaintiff notes that Dr. DeLoach did not have benefit of an Asperger's Syndrome diagnosis made by an examining source in March, 2012 (Tr. 506).   He is correct that generally, "updated" medical records are to be accorded more weight than older ones. *See Hamblin v. Apfel*, 7 Fed.Appx. 449, 451, 2001 WL 345798, *2 (6th Cir. March 26, 2001) (affirming an ALJ's rejection of an "outdated" opinion on the basis that another physician had performed a more recent appraisal with contradicting findings).   However, the ALJ did not err in discounting Dr. Mike's non-treating diagnosis of Asperger's Syndrome, noting that the diagnosis "was made based on [Plaintiff's] self-reported subjective complaints, rather than objective findings, the treating records, or Plaintiff's previous statements to others" (Tr. 116).   Further, the treating records created after January, 2012 generally do not support the finding

-15-

that Plaintiff was disabled by psychological conditions or that the conditions worsened after Dr. DeLoach made his recommendation. Plaintiff again stated in March, 2012 that he intended to use his disability payments to fund a business (Tr. 679). August, 2012 treating records state that Plaintiff did not exhibit any unusual behaviors (Tr. 628-629). While Plaintiff contends that Dr. DeLoach did not have benefit of the later records showing abnormal MRI findings, the more recent records show that the imaging studies were made in response to Plaintiff's report of physical rather than psychological symptoms.

Likewise, the ALJ's partial adoption of Dr. Caputo's November, 2011 assessment does not provide grounds for remand. Plaintiff faults the ALJ for adopting Dr. Caputo's opinion "[t]o the extent it is consistent with the assessed residual functional capacity" (Tr. 115). While Plaintiff argues that Dr. Caputo's findings ought to have been adopted in full, the ALJ permissibly concluded that Dr. Caputo's finding that "impulsive behaviors" would preclude gainful employment (Tr. 115) were contradicted by other portions of the record showing that Plaintiff's disinterest in finding a job, rather than psychological problems, were responsible for his spotty employment history. The ALJ cited a vocational counselor's finding that Plaintiff was not motivated to find work (Tr. 114) and December, 2005 records stating that Plaintiff rejected a job offer because "he believed it was in his best interests to be selective" (Tr. 114). As noted above, Plaintiff's plan to use his future disability funds to finance a business startup stands at odds with his claim that he was disabled from all work.

Because the evidence supporting a disability finding is not "overwhelming," a remand

for an award of benefits is not appropriate. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994). The Court notes however that while the psychological treating records do not justify a remand for benefits, the ALJ is directed to consider whether the present records, along with newer evidence of possible physical restriction, support a disability finding.

## CONCLUSION

For these reasons, Defendant's Motion to Remand [Docket #21] is GRANTED, remanding the case for further administrative proceedings consistent with this Opinion. Plaintiff's Motion for Summary Judgment [Docket #16] is DENIED as to the request for an award of benefits and DENIED as MOOT as to the request to remand for further administrative proceedings.

IT IS SO ORDERED.


/s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  September 30, 2015

Certificate of Service

I certify that a copy of this document was served upon parties of record on September 30, 2015 via electronic or postal mail.

/s/C. Ciesla
CASE MANAGER

-17-